PLANK *v.* AUDITOR GENERAL.

1. TAXATION—CANCELLATION—CERTIFICATE OF ERROR.

It was unlawful and invalid for the auditor general to issue a certificate of error canceling a tax deed without the request of one having an interest in the title, and over six years after issuance of the deed, more than ten years after the default in paying the tax for which the property was sold, and after six years' continuous possession of the land under the tax title, as a limitation of five years is placed upon the issuance of the certificate by 1 Comp. Laws 1915, § 4096; Act No. 80, Pub. Acts 1903.

2. SAME—SCHOOL SITE—EXEMPTION.

The exemption from taxation of real estate owned and occupied by educational and scientific institutions and lands owned by any county or school district and buildings used thereon for public purposes (1 Comp. Laws 1915, § 4001), did not have the effect of avoiding an entire tax on a large parcel which included a leased school site, 100 x 150 feet in dimensions, that was only a small fraction of the entire parcel, as it would be presumed that the assessment was made by deducting the value of the site from the entire valuation.

3. SAME—MANDAMUS—AUDITOR GENERAL.

Mandamus will lie to determine whether or not the issuance of the certificate by the auditor general was lawful, no application having been made to the State by persons having interests in the land, since its issuance was a ministerial act, and, hence, subject to review by the courts.

Mandamus by John O. Plank to compel Orámel B. Fuller, auditor general, to vacate and set aside a certificate of error. Submitted June 20, 1916. (Calendar No. 27,172.) Writ granted July 21, 1916.

*M. G. Paul,* for relator.

*Grant Fellows,* Attorney General, and *Duane H. Mosier* and *Clare Retan,* Assistants Attorney General, for respondent.

STEERE, J. In this proceeding it is sought by mandamus to compel respondent to vacate and set aside a certificate of error, canceling a tax deed obtained by petitioner, dated May 24, 1909, covering lot 3, sec. 27, township 27 north, of range 15 west, in Benzie county, Mich.

From the petition and answer it appears, undisputed, that the tax deed in question was given upon sale for delinquent taxes regularly levied and assessed against said land for the year 1905, no part of which was ever paid or tendered by the Standard Cement & Lime Company, then holding the original title, or by its representatives or assigns. Said tax deed was regularly recorded in the office of the register of deeds of Benzie county, and the notice required by law to bar redemption and authorize possession under it (Act No. 206, Pub. Acts 1893, as amended by Act No. 270, Pub. Acts 1909, 1 Comp. Laws 1915, § 4138) had been duly served upon the holders of the original title, as appeared by the sheriff's return of service on file in the office of the county clerk of Benzie county. After thus perfecting his tax title and right to possession, petitioner procured and continues in possession of said lands under his title so acquired.

In June, 1915, over six years after said tax deed was issued to relator, and more than ten years after default in payment of the taxes for which the land was sold, the county treasurer of Benzie, on his own initiative so far as known to respondent, and as appears by the answer—

"certified that the taxes for the year 1905 on said lands 'as assessed in said year included school site with schoolhouse thereon, used and occupied for public purposes under a perpetual lease,' and that upon return of said certificate of said county treasurer respondent issued a certificate of error, canceling said tax deed previously issued by him in whole," etc.

The only disclosed explanation of the county treasurer's certificate and respondent's action at that late date is the fact, as disclosed by the petition, that in 1888 a small portion of said land, consisting of a piece, or lot, 100 by 150 feet, had been leased to a school district for a term of years, under a lease granting to said district no title or interest in said lot except the right of occupancy and a license to use the same for school purposes, which might at any time become forfeited by nonuser or misuser, and right of re-entry thereafter become complete.

That the certificate of error in question was inadvertently and illegally issued cannot be, and is not, seriously controverted. The statute under which the certificate purports to have been issued (section 3921, 1 Comp. Laws, as amended by Act No. 80, Pub. Acts 1903) (1 Comp. Laws 1915, § 4096) expressly prohibits issuing a certificate of error after a period of five years from the date of the sale of land delinquent for taxes, except for the reason that the taxes had actually been paid within the time limited by law, or the land was not subject to taxation at the time of assessing the taxes for which it was sold. Neither of those facts appeared in this case. The certificate of the county treasurer upon which respondent acted did not even bring the small portion of said lands leased for a schoolhouse site under exemptions for educational purposes. These exemptions (section 3830, 1 Comp. Laws, 1 Comp. Laws 1915, § 4001) are limited to "such real estate as shall be owned and occupied by  *  *  * educational and scientific institutions," etc., and "lands owned by any county  *  *  *  or school district and buildings thereon used for public purposes." The tax for which this property was sold was by statute imposed upon the land, which admittedly did not belong to the school district. If under its occupation the district was entitled to exemption of its building or tene-

ments actually used and occupied by it, the assessor might, and presumptively did, deduct the value of the same from the entire value of the legal description assessed, as suggested in *Detroit Young Men's Society* v. *Mayor, etc., of Detroit,* 3 Mich. 184; but in any event the land was properly assessed to the owner, so far as appears here, and no complaint or application for a certificate of error was made by the school district or the original fee owner, according to respondent's answer.

The county treasurer, on whose certification relative to a school site this certificate of error was issued, does not appear from the answer to have been interested in the property, nor even to have moved for a cancellation of the deed.

"The tax law does not confer upon the auditor general the right to proceed upon his own motion to withhold the conveyance of lands sold for taxes, or upon his own motion to proceed to cancel deeds. * * * The statute clearly contemplates that somebody interested in the lands shall set the auditor general in motion in order to confer upon him the authority to act." *State Land Commissioner* v. *Auditor General,* 131 Mich. 147 (91 N. W. 153).

It is contended, however, that, conceding the certificate of error was improvidently issued, mandamus will not lie against respondent to vacate the same, for the stated reasons that the statute confers upon him no authority to do so, "there is no unquestionable and legally defined duty imposed upon him to vacate a certificate of error issued by him, and therefore mandamus should be denied"; that relator has another adequate remedy, and if respondent's action in this particular may be directly questioned in any proceeding, it is of a *quasi* judicial character, and can only be reviewed on certiorari.

In support of the contention that respondent acted

in a *quasi* judicial capacity, and therefore his determination in that particular can only be reviewed by certiorari, counsel cite *Vetterly* v. *McNeal,* 129 Mich. 507 (89 N. W. 441), and *Flint Land Co.* v. *Auditor General,* 133 Mich. 542 (95 N. W. 543). In the *Vetterly Case,* which was an action for trespass, the court incidentally said, without deciding, that a certificate of error which figured in the case, "if a judicial act, is one of a limited tribunal." In *Northrup* v. *Maneka,* 126 Mich. 550 (85 N. W. 1128), where the court had occasion to directly consider and decide the question, it was squarely held that the acts of the auditor general in issuing such certificates are ministerial, and not judicial. In the *Flint Land Co. Case, supra,* the court did review upon certiorari the action of the auditor general in issuing a certificate of error and held under the facts shown that the same "must be vacated and held for naught," but the propriety of the particular form of procedure resorted to does not appear to have been raised by counsel or called to the attention of the court. The case is, however, precedent for the proposition that this court may review in a direct proceeding, and annul if found erroneous, the action of the auditor general in issuing a certificate of error. In *Hubbard* v. *Auditor General,* 120 Mich. 505 (79 N. W. 979), it was contended that mandamus would not lie to correct an error of respondent in refusing to issue a certificate of error to which the court found relator was entitled, and it was held:

"Mandamus is the proper remedy to compel performance and determine the validity of the reason for refusal."

In *Hoffman* v. *Auditor General,* 136 Mich. 689 (100 N. W. 180), where relator's rights depended upon a proper construction of the same section of the tax law involved here (section 3921, 1 Comp. Laws, 1 Comp.

Laws 1915, § 4096), it was held that mandamus was a proper proceeding to determine the validity of the reasons for respondent's action, as well as refusal to act, and a writ was granted as prayed to compel him to undo what it was found he had done in contravention of the statute.

The certificate of error, unquestionably issued inadvertently and in contravention of the statute, operates *prima facie*, both on the records and in a court, to nullify relator's title and right to possession of the property he now holds. As shown by the answer, no one interested in the title to the property involved moved for the issuance of this erroneous certificate of error. On the face of these proceedings, relator is entitled to relief from this, in effect, defamation of his title, and his only recourse is against respondent. We see no reason under the circumstances disclosed here why relief cannot be given to correct such erroneous ministerial act by this direct and comparatively simple remedy. The action complained of must be vacated and held for naught.

A writ of mandamus may issue, directing respondent to make, certify, and enter upon his records in proper form an order vacating, setting aside, and annulling said certificate of error. As this proceeding involves the action of a public officer and a question of public interest, no costs will be awarded.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, BROOKE, and PERSON, JJ., concurred.