ROSIN v. STATE LAND OFFICE BOARD.

1. Taxation—Nonpayment—Title of State—Former Owner.
   When the State acquires title to land after property has been bid in for nonpayment of taxes, the former owner has no more interest in the title thereto than any stranger to the title (Act No. 155, Pub. Acts 1937, as amended).

2. Same—Nonpayment—Title of State—Withholding from Scavenger Sale—Rents.
   The withholding, under the State land office board act, of property from sale by the State for a limited period of time after it had acquired title, at request of municipality within which land was located, does not affect the State's title or its right to manage the property and collect rents therefrom (Act No. 155, §§ 3–5, 10, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941, and Acts Nos. 16, 159, Pub. Acts 1943).

3. Same—Title of State—Rents—Redemption by Former Owner.
   Former owner who occupied land during one year and seven months' period in which the State had title by reason of nonpayment of taxes and land was withheld from so-called scavenger sale at request of municipality, was not entitled, by reason of redemption through payment of all taxes, interest and penalties to the State, county and city, to recover from State the amount he had paid it in rent during such occupancy since to do so would give him rent-free occupancy without the burden of paying taxes while property was immune from taxation by local taxing units and State land office board act directs distribution of money received to local taxing units but not that it be returned to former owner upon his redemption (Act No. 155, §§ 3–5, 10, Pub. Acts 1937, as amended by Act No. 363, Pub. Acts 1941, and Acts Nos. 16, 159, Pub. Acts 1943).

Appeal from Court of Claims; Souter (Dale), J., presiding. Submitted April 5, 1946. (Docket No. 66, Calendar No. 43,359.) Decided May 13, 1946. Rehearing denied June 28, 1946.

Claim by Nathan D. Rosin against State Land Office Board for rents collected during period property was withheld from sale. Motion to dismiss granted. Plaintiff appeals. Affirmed.

*Samuel H. Rubin,* for plaintiff.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Meredith H. Doyle* and *Elbern Parsons,* Assistants Attorney General, for defendant.

BOYLES, J. This is an appeal from an order entered by the court of claims granting defendant's motion to dismiss plaintiff's claim on the ground that his petition failed to state a cause for action.

Appellant's petition asserts that prior to June 3, 1943, he was the owner of certain real estate in the city of Detroit, and that on that date said land was sold to the State of Michigan for nonpayment of taxes. He further asserts that on or about January 4, 1945, pursuant to Act No. 155, Pub. Acts 1937, and particularly section 5 * thereof, and at the request of the city of Detroit, said property was withheld from sale, and that within the time provided by law redemption of said property was effected by his payment of all taxes, interest and penalties to the State of Michigan, county of Wayne and city of Detroit, totaling $22,412.13; that from

---

* As amended by Act No. 159, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 3723–5, Stat. Ann. 1944 Cum. Supp. § 7.955).—REPORTER.

June 3, 1943, up to and including January 4, 1945, the State land office board collected as rent from said property $6,460.

He asserts that redemption having been effected, he is entitled to a return of this rental, that he has made demand therefor, but payment has been refused. His present claim, filed in the court of claims, is for the recovery of this rent.

Apparently plaintiff in his brief is confused as to the period of time during which the State collected the rents. His petition asserts that the property was withheld from sale at the request of the city of Detroit *on or about January 4, 1945;* in his brief plaintiff argues that the State collected $6,460 rent during said withholding period, and that "during the withholding period the State land [office] board was permitted by law to manage and rent the property, and we contend do no more than that, that is, *only to manage and rent, not to keep the rent it has collected.* If the legislature intended for the State to keep the rent collected during the withholding period, it would have said so."

Obviously plaintiff is mistaken if he now contends that the State collected $6,460 rent since January 4, 1945. However, the meritorious question in the case is whether plaintiff, under the applicable statutes, is entitled to a refund of the rent money collected by the State.

Plaintiff concedes that on June 3, 1943, by auditor general's deed, title to the property in question became vested in the State of Michigan. Thereupon this property came under the control and jurisdiction of the State land office board. Act No. 155, § 3, Pub. Acts 1937, as amended by Act No. 16, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 3723-3, Stat. Ann. 1945 Cum. Supp. § 7.953). Then this brought to bear section 4 of the above-cited act, as amended by Act

No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 3723-4, Stat. Ann. 1945 Cum. Supp. § 7.954), the applicable part of which is as follows:

"The State land office board and the department of conservation shall have the power for and on behalf of the State of Michigan to take possession of any land, which shall come under their respective control and jurisdiction as provided in section 3 of this act, exercise such powers in the management thereof as are provided in section 9 of this act and enter into contracts with licensed real-estate brokers for the management thereof and collection of rents therefrom. Commissions for the collection of such rentals and maintenance costs, incident to proper management of the properties involved, may be paid by the board or department from proceeds of revenues from such rentals."

Section 5 of said act, as amended,[*] provides that any municipality may at any time prior to the opening date of any sale provided for in section 7 ("scavenger sale" by the State land office board) withhold such land from sale by filing an application with the board for that purpose. It further provides that such withholding shall apply only to the sale next following vesting of title in the State, "and shall not affect the right of the State to take possession of such lands and manage and rent the same during the period they are withheld."

Said section further provides that any lands so withheld (from scavenger sale) may be redeemed by the municipality for the benefit of the former owner by payment of all delinquent taxes, and special assessments which had been assessed or were a lien at the time title vested in the State. Under this provision, plaintiff paid up the delinquent taxes and penalties, as a result of which the State land office

[*] The amendment by Act No. 321, Pub. Acts 1945, has no bearing.

board was required to convey said property to plaintiff, under the succeeding provisions of said section 5.

The applicable part of section 10 of the act, as amended by Act No. 16, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 3723–10, Stat. Ann. 1945 Cum. Supp. § 7.960), provides:

"All moneys received by the State land office board, any county treasurer or the department of conservation, under the provisions of this act, * * * shall be credited to the general fund of the State, and, after first deducting such commissions and maintenance costs as are authorized in sections 4 and 8 of this act, shall be paid to the several county treasurers who shall remit the same to the several tax assessing units, including municipalities collecting their own delinquent taxes, in proportion to the delinquent taxes and special assessments of such units cancelled against any description of land sold under the provisions of this act, by the board, any county treasurer or the department of conservation:"

When the State acquired title on June 3, 1943, plaintiff as former owner had no more interest in the title than any stranger to the title. *James A. Welch Co., Inc.,* v. *State Land Office Board,* 295 Mich. 85. The statutes plainly indicate that the withholding of the property from scavenger sale at the request of the city of Detroit, for a limited period of time, did not affect the State's title or its right to manage the property and collect rents therefrom. After the State acquired title it collected $6,460 rental from plaintiff, the former owner, while allowing him to remain in possession. He is not entitled to recover the rent which the State required him to pay for the occupancy. *Emmons* v. *State Land Office Board,* 305 Mich. 406.

To hold otherwise would put a premium on tax delinquency and subsequent redemption after land is withheld from scavenger sale by a municipality. During the period from June, 1943, to January, 1945, while title to the land in question was held by the State, it was immune from taxation by local taxing units. *Watkins* v. *Fuller,* 265 Mich. 11. Plaintiff, by paying up the delinquent taxes and penalties, redeemed and again became the owner, without having to pay any taxes which otherwise could have been assessed during his period of occupancy if the State had not held the title. If plaintiff could now recover the rentals he has paid, he would fare better than he would if he had not lost title to the State. He would have the benefit from rent-free occupancy without the burden of paying any taxes during that period. Nothing in the statute requires such an illogical conclusion. On the contrary, section 10 of the act, above quoted, in plain language directs the State to return to county treasurers for distribution to local taxing units the money it received, after certain deductions. It does not indicate that the money is to be returned to the former owner, in the event he ultimately decides to redeem.

Plaintiff's petition did not state a cause for action and the order dismissing the same is affirmed, with costs.

BUTZEL, C. J., and CARR, BUSHNELL, SHARPE, REID, NORTH, and STARR, JJ., concurred.