VETTERLY v. McNEAL.

1. TRESPASS—TITLE—POSSESSION—INSTRUCTIONS.

In trespass *quare clausum*, a request to charge that title alone, even if found in plaintiff, would not entitle him to recover, was sufficiently covered by an instruction that plaintiff could not recover unless found to have been in actual possession.

2. SAME—RIGHT OF ENTRY.

One cannot be held liable in trespass for peaceably entering on his own land in the wrongful possession of another.

3. TAXATION—DESCRIPTION OF LANDS.

A description of land in a tax deed as the "west fractional half" of a given section is identical in effect with that of the "west fractional quarter" of such section, which was employed in the anterior proceedings, where the land borders on one of the Great Lakes, and lies wholly south of the extended quarter line.

4. SAME—CERTIFICATE OF ERROR.

Where a certificate of error issued by the auditor general purported to cancel a tax deed because the property was returned delinquent, advertised, and bid off to the State under one description, while the sale and deed were made under another description, and, seven days after the certificate was issued, the auditor general issued a deed of the same premises under the description first mentioned, it will be presumed that the certificate was not based on any other defect than the alleged misdescription.

5. SAME—VALIDITY—COLLATERAL ATTACK.

A certificate of error issued by the auditor general purporting to cancel a tax deed, if judicial, is the act of a limited tribunal, and if it shows affirmatively on its face that it was issued on a supposed defect, which was clearly not such as a matter of law, it will be treated as void in any proceeding.

6. SAME.
> Whether such certificate, to be valid, must set out the errors relied on for its issuance,—*quære*.

7. SAME.
> A certificate by the auditor general to the effect that a deed of State tax lands for the taxes of certain years, including 1885, was erroneously executed, for specified reasons not applicable to the tax of 1885, does not operate to cancel the deed so far as it relates to the title for that year.

Error to Berrien; Coolidge, J. Submitted January 8, 1902. Decided March 4, 1902.

Trespass *quare clausum fregit* by August Vetterly against James W. McNeal. From a judgment for plaintiff, defendant brings error. Reversed.

*O'Hara & O'Hara*, for appellant.

*Gore & Harvey*, for appellee.

HOOKER, C. J. This action was trespass *quare clausum*, begun in justice's court, and certified to the circuit court upon plea of title, where the plaintiff prevailed, and the defendant has brought error; the judgment being based upon the verdict of a jury of $4.37 in plaintiff's favor. The *locus in quo* is a governmental fractional subdivision of section 18, which lies contiguous to Lake Michigan, and, according to the plat, contains 56.70 acres. The accompanying drawing shows the situation. The plaintiff owns the land on section 19, lying south of it, and has for some years been in possession thereof. He claimed to own the premises in dispute, and offered testimony to show title under various tax deeds. On the other hand, the defendant claimed to have been in the actual possession, and that the alleged acts were not trespasses for that reason, and for the further reason that he owned the fee under tax deeds from the State. The court instructed the jury that "the real and only question for consideration in this case is which of these parties had the actual possession of the lands in controversy on the 24th of August, 1900."

Under the charge, the jury must have found that the plaintiff was in actual possession, and that the defendant was not, as that is the only theory upon which the verdict is reconcilable with the charge.    Counsel for the defend-

ant say that it was error to permit the jury to find that the plaintiff was in either actual or constructive possession. As he did not leave the latter question to the jury, we need not consider questions relating to the plaintiff's title in this connection.

In connection with the claim that the question of plaintiff's actual possession should not have been left to the jury, counsel for the defendant allege error upon the refusal to direct the jury to find that the defendant was in actual possession. We are of the opinion that the record contains evidence which makes these disputed questions of fact, and therefore the court committed no error in leaving them to the jury.

It was not error to refuse to instruct the jury that the title alone, even if found in the plaintiff, would not entitle plaintiff to recover. It was covered by the instruction that plaintiff could not recover unless he was found to have been in actual possession.

Actual possession by the plaintiff being made the crucial question in the case, and being determined by the jury, other questions become unimportant, except as they relate to instructions regarding what constitutes actual possession, or themselves present a controlling principle superior to that of actual possession by the plaintiff. Thus, the court instructed the jury that the defendant's deeds were void, and conveyed no title. If it can be said that title in the defendant would constitute a defense notwithstanding plaintiff's actual possession, we must investigate the questions relating to such title. It is the general rule that a defendant owning the title to land cannot be found guilty of trespass for peaceably entering upon the same. *Smith v. McAdam*, 3 Mich. 506. See, also, 26 Am. & Eng. Enc. Law, pp. 600, 601, where numerous authorities are collected.

The defendant claimed title upon two grounds—*First*, under the deeds from the auditor general; *second*, by adverse possession. It is not necessary to discuss the latter, as the jury must have found that there was no such title in determining that plaintiff was in possession. Under the proof of paper title, a legal question was presented. This was evidently so understood by the trial judge, and he decided it by holding it void. To understand this question, a further statement of fact is required. The

defendant received two auditor general's deeds for taxes of the years 1885 to 1894, inclusive, dated May 8, 1899, at which time he paid the delinquent taxes for the years 1895 to 1898, inclusive. On March 3, 1900, the auditor general issued two certificates of error purporting to cancel these deeds for the following reasons, viz. : The deed for the taxes of 1891 for the reason that only the west fractional one-quarter of section 18 was returned delinquent, advertised, decreed, and bid in to the State, while the sale was made of, and deed issued for, the west fractional one-half of said section. The other deed was canceled for the following reasons, viz. :

"Southwest fractional quarter of section 18, town 8 S., and range 21 W., Berrien county, was erroneously sold and deeded for said years' taxes, for the following reasons: Sale for taxes for 1886 invalid for the reason it contained a reassessed tax of 1883, the items being in fact the taxes rejected for the year 1884; sale for taxes of 1887 and 1888 was invalid, there being no dollar mark in the decree for either year; sale for taxes for 1889 and 1890 was invalid for the reason there was no report of sale in either year; sale for taxes of 1892 and 1893 and 1894 was invalid for the reason held as State tax land for taxes assessed for the year 1901, and also for other jurisdictional reasons; sale of 1894, no proof of publication; sale for taxes of 1892 and 1893, decree entered without jurisdiction."

It is contended by counsel for the defendant that the description west fractional quarter of section 18 is identical, in effect, with that of west fractional half of section 18. This we think is so, as will be seen from the plat. It is claimed that the deeds issued to defendant were not void for the reason stated, and that a cancellation upon that ground is void, and, as that is the only reason given for the cancellation of the deed for the tax of 1891, defendant's title is complete under the deed for the tax of that year; also under the deed for the tax of 1885, which is said not to have been canceled. On the other hand, it is urged (1) that the certificate of error cannot be collaterally attacked; and, (2) if it could be, there is no presumption

that there were not other defects than the one mentioned in the deed for the taxes of 1891.

We think the latter contention may be disposed of by saying that the record shows that, seven days after issuing the certificate of error, a deed was issued of the same premises to the plaintiff under the description west fractional quarter of section 18. We feel justified in assuming that the auditor general would not have done this if his certificate of error had been based on any defect not therein stated.

The certificate of error, if a judicial act, is one of a limited tribunal, whose jurisdiction should, under ordinary rules, appear upon the face of its proceedings; and whether or not the failure of a certificate to affirmatively show the jurisdiction, by stating the error acted upon,—would be fatal to the certificate,—which we need not decide,—we are of the opinion that in any proceeding a certificate which shows affirmatively that it was issued upon a supposed error or defect, which was clearly not such as a matter of law, should be treated as void. That being the case here, the court should not have instructed the jury that the defendant had no title, as on the face of the proceedings he had title under his deed for the tax of 1891, which was not affected by the certificate of error or the subsequent deed to plaintiff.

Again, the certificate of error does not purport to cancel the tax of 1885 or the deed for the tax of 1885. Had such title been deeded by a separate deed, it could not be claimed that it was affected. Being included with taxes for other years in a common deed, it is said that the certificate goes to the whole deed. This is not a necessary conclusion from the act. The deed might be annulled in part by the certificate, and not *in toto*, if the errors did not affect all of the titles covered by it, which apparently they did not.

Some questions are raised over the nature of the evidence to prove possession and adverse possession; but we do not discuss them, thinking that our former decisions are a sufficient guide for future proceedings.

The judgment is reversed, and a new trial ordered.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.